IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RANDY LIGHTY,                                  )
                                               )
       Plaintiff,                              )
                                               )
       v.                                      )          Civil Action No. 1:19-cv-1520 (RDA/MSN)
                                               )
GATES HUDSON & ASSOCIATES, INC.,               )
                                               )
       Defendant.                              )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Rule 56 Motion for Summary Judgment brought

by Defendant Gates Hudson & Associates, Inc. ("Defendant" or "Gates Hudson") in this Title VII

employment discrimination and retaliation case.  Dkt. 52.  The Court dispenses with oral argument

as it would not aid in the decisional process.  Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).

This matters has been fully briefed and is now ripe for disposition.

Considering Defendant's Motion for Summary Judgment together with Defendant's

Memorandum in Support (Dkt. 53) and Plaintiff Randy Lighty's Opposition (Dkt. Nos. 59-61), it

is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED.  For the

reasons that follow, judgment will be entered against Plaintiff because he has failed to establish a

genuine issue of material fact.

## I.  BACKGROUND

Although the parties dispute certain facts, the following facts are either undisputed or

considered in the light most favorable to Plaintiff, who is proceeding *pro se* in this matter.  *See*

*Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (stressing that courts must view the evidence on

summary judgment in the light most favorable to the non-moving party); *see also* Defendant's

Statement of Undisputed Material Facts (Dkt. 53 at 4-6); Plaintiff's Response (Dkt. Nos. 59-61).[1]

Facts in dispute are so noted.

1. Plaintiff's Amended Complaint alleges that he was subjected to a hostile work environment based on his race and religion during his employment.  Dkt. 14 at 4.

2. Plaintiff was employed by Defendant starting on November 5, 2018.  Dkt. 53 at 4.

3. Plaintiff was assigned by Defendant to work at Park Arlington Ridge as a maintenance tech.  Dkt. 53-4, ¶ 4.

4. Plaintiff alleges that while working at the Park at Arlington Ridge housing complex, a maintenance supervisor named Dan Rodich made a number of offensive comments toward him that were based on his race and/or his religion.  Dkt. 14 at 5.

5. Plaintiff alleges that he "filed an EEOC complaint against Gates Hudson alleging racial and religious discrimination" in July of 2019.  *Id.*

6. Plaintiff alleges that he "withdrew" the July 2019 EEOC Charge with "the expectation that management would take steps to address the discrimination."  *Id.*

7. Defendant has no record of receiving any notification from the EEOC filed by Plaintiff in or around July of 2019.  Dkt. 53-4, ¶ 7.

8. Plaintiff alleges that he was transferred to another housing complex, Crystal Towers, in August of 2019.  Dkt. 14 at 5.

9. Defendant did in fact transfer Plaintiff to Crystal Towers following his internal complaint of harassment.  Dkt. 53-4, ¶ 8.

---

[1] In addition to his Opposition (Dkt. 60), Plaintiff also filed separate responses to two exhibits Defendant attached to its Motion for Summary Judgment: a declaration by Michelle Russell (Dkt. 59) and his termination notice (Dkt. 61).  The Court considers these submissions by Plaintiff as well.

10. Dan Rodich did not work at Crystal Towers at any time during Plaintiff's employment with Gates Hudson. Mr. Rodich had no reason to interact with Plaintiff after Plaintiff's transfer. *Id.* ¶ 11.

11. Plaintiff makes no further allegations of inappropriate comments from Dan Rodich to him after Plaintiff was transferred to Crystal Towers in August of 2019. Dkt. 14 at 4; Dkt. 53-4, ¶ 14.

12. After Plaintiff was transferred to Crystal Towers, he did not experience any further interactions with Mr. Rodich. Dkt. 53-4, ¶ 11.

13. Although Dan Rodich was not a management-level employee of Defendant, the parties dispute his level of authority. Defendant argues that Mr. Rodich did not have the authority to hire or fire employees; to make decisions on whether or not to promote employees; to reassign employees into roles with significantly different responsibilities; or to effect a significant change in any employee's benefits. *Id.* at ¶ 6. Plaintiff asserts that "[a]ll supervisors have the power to hire and fire or to get someone like [Michelle Russell] and Aaron[,] the regional [manager,] to do it." Dkt. 60 at 4.

14. Plaintiff's transfer to Crystal Towers did not entail any decrease in compensation, job title, level of responsibility, or opportunity for promotion. *Id.* ¶ 12. Plaintiff alleges he was transferred for the purpose of being fired, but he does not provide any evidence to support this claim. Dkt. 60 at 4.

15. Defendant's policy is such that an employee who is transferred from working at one property to another is subject to the same ninety-day probationary period as if he were a new hire. Dkt. 53-4, ¶ 13.

3

16. Upon his reassignment from Park Arlington Ridge to Crystal Towers, Plaintiff became a probationary employee with respect to that assignment.  *Id.*  Plaintiff claims he had no warning of his probationary period after being transferred.  Dkt. 60 at 5.

17. During Plaintiff's assignment to Crystal Towers, Defendant argues that he engaged in behavior which his supervisors perceived to be unprofessional, aggressive, and insubordinate. Dkt. 53-4, ¶ 15.  Plaintiff disputes that he raised his voice or was belligerent and insubordinate, specifically denying almost every incident noted by Defendant.  Dkt. 61.

18. For example, on August 14, 2019, when Plaintiff was informed by his supervisor that he needed to leave early to avoid incurring overtime, Defendant asserts that Plaintiff refused.  He communicated his refusal to his supervisor in an unprofessional, demanding, and disrespectful tone, including raising his voice and yelling.  Dkt. 53-4, ¶ 16.

19. On August 20, 2019, Plaintiff, despite having been previously warned, refused to remove his earbuds during a morning maintenance meeting.  *Id.* ¶ 17.

20. On August 28, 2019, Plaintiff complained about his co-workers speaking Spanish, stating repeatedly "this is America" and "they should be speaking English."  Plaintiff suggested that his co-workers were being "sneaky" and stated he "knew what they are trying to do."  Plaintiff used profanity in his complaints about his co-workers.  *Id.* ¶ 18.  Plaintiff does not dispute these facts out of hand, instead taking issue with the characterization of his statements about Spanish-speaking co-workers; Plaintiff argues that he intended his comments to ensure everyone understood the language spoken in meetings.  Dkt. 60 at 3, 6.

21. In addition, Defendant argues that Plaintiff repeatedly engaged in insubordination at work by failing or refusing to appear for work in his work-approved uniform and by failing to attend morning meetings as required.  Dkt. 53-4, ¶ 19.  Plaintiff admits he came to work out of his

uniform but claims that, like "Calvin" and the rest of the staff, he changed his clothes at work. Dkt. 61.

22. Plaintiff's supervisor and several work colleagues expressed concerns to Gates Hudson management that Plaintiff's attitude and belligerent attitude were causing problems in the workplace.  Dkt. 53-4, ¶ 20.

The Court denied Defendant's Motion to Dismiss Plaintiff's Amended Complaint on May 19, 2020, reciting in detail the Amended Complaint's allegations.  Dkt. 21.  In short, Plaintiff alleges in his Amended Complaint that he was subjected to race-based and religion-based harassment during his employment with Defendant, further alleging that Gates Hudson retaliated against him he attempted to complain about said harassment.  Dkt. 14.  Plaintiff's chief complaint revolves around the conduct of a maintenance supervisor at Park Arlington Ridge, Dan Rodich, who he alleges made disparaging comments to him during his employment that constituted harassment on the basis of Defendant's race, as an African American man, and his religion, as a practicing Muslim.  *Id.*  He alleges that on or around August 27, 2019, after he complained to Gates Hudson about the alleged harassment he was experiencing, the company transferred him to a different housing complex, Crystal Towers.  *Id.*  He complains that Crystal Towers was not his "preferred" reassignment location.  *Id.*

When this Court denied Defendant's motion to dismiss, the Court took all well-pleaded allegations as true—as it must at the motion-to-dismiss stage—and liberally construed Plaintiff's *pro se* pleading to adequately allege hostile work environment, discrimination, and retaliation claims under Title VII of the Civil Rights Act of 1964.  *See id.* at 5-12.  The Court found that Plaintiff first filed a Charge of Discrimination with the United States Equal Opportunity Employment Commission ("EEOC") in July of 2019, purportedly prompting an internal meeting

among higher-level employees of Defendant; that he filed a second Charge of Discrimination with the EEOC on September 5, 2019, alleging discrimination and retaliation on the basis of race and religion; and that the EEOC issued Plaintiff a Dismissal and Notice of Rights letter on September 13, 2019—the day after he was terminated.  *Id.* at 2.

During discovery, Plaintiff failed to adequately participate in the discovery process and did not follow the rules and procedures of the Court, which Magistrate Judge Nachmanoff found resulted in prejudice to Defendant.  Dkt. 42.  Accordingly, Judge Nachmanoff appropriately determined that sanctions were warranted under Federal Rule of Civil Procedure 37, ruling that Plaintiff would be precluded from introducing any evidence in opposition to summary judgment or trial that has not been previously produced in discovery, which closed on November 13, 2020. *Id.*  On December 21, 2020, Defendant moved for summary judgment.  Dkt. 52.  Plaintiff filed a Motion for Additional Time to respond to Defendant's summary judgment motion (Dkt. 56) which Judge Nachmanoff denied.  Dkt. 58.  Plaintiff replied on January 12, 2021.  Dkt. Nos. 59-61.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden" of showing that there is no genuine issue of material fact.  *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for

summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

At the summary judgment phase, a Court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Plaintiff is the non-moving party and all reasonable inferences are accordingly drawn in his favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan*, 572 U.S. at 657). This "fundamental principle" guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. And a "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). And this Court requires that the non-moving party list "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B).

## III.   ANALYSIS

After reviewing the factual record on a Rule 56 motion, this Court must determine whether summary judgment is appropriate as to any of Plaintiff's Title VII claims or whether genuine issues of material fact exist as to Plaintiff's claims. Defendant served the proper notice required under E.D. Va. Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). This notice included a warning that "Plaintiff must identify all facts stated by Defendant with which Plaintiff disagrees, and must set forth Plaintiff's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury)." Dkt. 52 at 2.

First, the Court notes that Plaintiff has not properly disputed many of the facts at issue and has failed to explain how his version of the events "support[s] the facts alleged to be in dispute." E.D. Va. Loc. Civ. R. 56(B). For example, Plaintiff responds to Defendant's summary judgment motion by arguing "he never [yelled] at any supervisor" and that "this is Gates Hudson trying to cover up the [r]etaliation[.]" *See* Dkt. 60 at 6. He provides no "specifically captioned section listing all material facts as to which" he contends there is "a genuine issue necessary to be

8

litigated," nor does he provide citations to the record—all in contravention of this Court's rules.

See E.D. Va. Loc. Civ. R. 56(B).  Although this Court has afforded Plaintiff considerable latitude

throughout this litigation in light of his *pro se* status,[2] the Court "is not required to sift through the

record searching for evidence to support opposition to summary judgment," *Crawford v. Newport*

*News Indus. Corp.*, No. 4:14-cv-130, 2018 WL 2943445, at *18 (E.D. Va. June 11, 2018) (citation

omitted).  Under Federal Rule of Civil Procedure 56(e), the Court may consider a fact undisputed

when a non-movant fails to properly address another party's assertion of fact as the Federal Rules

of Civil Procedure require.  *See* Fed. R. Civ. P. 56; *Liberty Ins. Corp. v. TLB*, 433 F. Supp. 3d 902,

907 (E.D. Va. 2020) ("If a party fails to address the other party's assertion of fact, the Court may

'consider the fact undisputed for purposes of the motion.'") (quoting Fed. R. Civ. P 56(e)(2)).  In

particular, where Plaintiff fails to respond to a specific Statement of Fact, responds with conclusory

assertions, or entirely fails to address the facts Defendant set forth, the Court will view those facts

as undisputed.  This inadequacy, from a pleading context, is not meant to condone or excuse Mr.

Rodich's alleged reprehensible behavior.

The Court first examines the merits of Plaintiff's hostile work environment and

discrimination claims before resolving his retaliation claim.

## A.   Hostile Work Environment

To prevail on a Title VII hostile work environment claim through pretext rather than on

direct or circumstantial evidence, a plaintiff must make a *prima facie* showing that he suffered

---

[2] The Court did not impose sanctions when Defendant first argued that Plaintiff had refused to participate in discovery.  Dkt. 34.  When it ruled on Defendant's second motion for sanctions, the Court declined to dismiss Plaintiff's case under Federal Rule of Civil Procedure 37 even though he had still not adequately engaged in the discovery process.  Dkt. 42.  The Court also did not dismiss Plaintiff's case when he failed to appear for the scheduled final pretrial conference, instead permitting Plaintiff a twenty-day show cause period as to why the case should not be dismissed. Dkt. 46.

from "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)) (internal quotation marks omitted).

In support of its motion for summary judgment, Defendant does not dispute the first three elements.  Instead, Defendant argues that the record provides insufficient evidence supporting Plaintiff's hostile work environment claim because he has not forecast any evidence that would satisfy the fourth element of his hostile work environment claim, that "there is some basis for imposing liability on the employer." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207-08 (4th Cir. 2019).[3]

Summary judgment on this count is appropriate because Plaintiff's hostile work environment claim rises and falls with his allegations against Mr. Rodich.  But as the summary judgment record makes clear, Mr. Rodich was not a "supervisor" within the meaning of *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013).  He did not have the power to "effect a significant change" in Plaintiff's employment status.  *Id.*  Mr. Rodich did not enjoy the authority to hire or

---

[3] Defendant has not waived the *Faragher-Ellerth* defense as "there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion[.]" *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (internal citations omitted).  The same general rule applies to the *Faragher-Ellerth* defense specifically.  *See Swindell v. CACI NSS, Inc.*, No. 5:17-CV-617-D, 2020 WL 5824024, at *14 (E.D.N.C. Sept. 30, 2020).  Here, Plaintiff has suffered no unfair surprise or prejudice because Defendant specifically asserted the *Faragher-Ellerth* defense in its summary judgment motion; Plaintiff had a full opportunity to brief and argue the merits of such defense and did, in fact, engage substantively with the defense in his summary judgment briefing.  *See* Dkt. 60 at 4 (opposing Defendant's summary judgment motion by arguing that "Dan Rodich's title was supervisor.  All supervisors have the power to hire and fire[.]").  Moreover, Plaintiff had the incentive and opportunity to probe factual issues related to this defense through discovery.

fire employees; he could not decide whether to promote employees.  Nor could he reassign

employees into roles with significantly different responsibilities.  He also lacked any power to

significantly alter an employee's benefits.  Because vicarious liability for employee conduct only

exists "when the employer has empowered that employee to take tangible employment actions

against the victim," *id.*, and because Defendant never vested such power in Mr. Rodich, Plaintiff

cannot prevail on an essential element of his hostile environment claim.  *See  Owen v. Rutherford*

*Supply Corp.*, No. 3:19CV225-HEH, 2020 WL 2758787, at *2 (E.D. Va. Jan. 23, 2020) ("Because

Woolridge does not qualify as a supervisor . . . Defendant may not be held strictly liable for

Woolridge's conduct, and Plaintiff cannot succeed on those claims.").

Therefore, Defendant may only be held liable for Mr. Rodich's conduct if Gates Hudson

"itself was negligent in failing to take effective action to stop harassment about which it knew or

should have known." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 331 n.7 (4th Cir. 2012);

*see also Vance*, 570 U.S. at 427, 439.  But as Plaintiff alleges, in August of 2019, Defendant

transferred Plaintiff to a different site, away from Mr. Rodich, after Plaintiff's July 2019 complaint

and after the internal manager meeting the complaint allegedly prompted.  *See* Dkt. 14 at 5.

Therefore, Plaintiff admits that Defendant took remedial action within a month of becoming aware

of the harassment.  The summary judgment record simply does not support a finding that Gates

Hudson failed to take effective action to stop the harassment, even assuming the company knew

about or should have known about Mr. Rodich's conduct.

For these reasons, the Court must grant summary judgment in Defendant's favor as the

undisputed material facts, and even Plaintiff's own allegations, do not establish a *prima facie*

hostile work environment claim.

B.   Discrimination

Title VII makes it illegal for an employer "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ".  42 U.S.C. § 2000e-2(a)(1). One avenue for a Title VII plaintiff to demonstrate unlawful discrimination is "through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action."  *Hill v. Lockheed Marlin Logistics Mgmt., Inc.*, 354 F. 3d 277, 284 (4th Cir. 2004) (en banc).  In this case, however, despite Plaintiff's representations that he has evidence to support his claims, his failure to meaningful participate in the discovery process resulted in the Court's November 17, 2020 Order barring him "from introducing any evidence in opposition to summary judgment or at trial that has not been previously produced in discovery, which [] closed as of November 13, 2020."[4]  Dkt. 42.  Having reviewed the record, the Court finds that there is no direct or circumstantial evidence supporting Plaintiff's discrimination claims.

"Where, as here, the record contains no direct evidence of discrimination, a plaintiff's Title VII claims must be analyzed under the *McDonnell-Douglas* burden-shifting framework."  *Briscoe v. W.A. Chester, LLC*, No. GJH-17-1675, 2019 WL 2395310, at *3 (D. Md. June 5, 2019), *aff'd*, 799 F. App'x 183 (4th Cir. 2020).  Under this familiar framework, a plaintiff bringing a Title VII disparate treatment claim must make a *prima facie* case establishing "(1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class."  *Blakes v. Gruenberg*, No. 116-CV-240, 2016 WL 8731784, at *7 (E.D. Va. July 29, 2016) (citing *White v. BFI Waste*

---

[4] This includes multiple audio and video recordings of misconduct Plaintiff claims to have in his possession, none of which were disclosed to Defendant during discovery.  *See* Dkt. 60.

*Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

For purposes of this motion, the Court assumes that the facts alleged in Plaintiff's Amended Complaint are sufficient to make out a *prima facie* case of racial discrimination.  In its papers, Defendant does not appear to contest that Plaintiff is capable of making out such a *prima facie* case.

As Plaintiff has made a *prima facie* case of discrimination, the burden shifts to Defendant. After a Title VII plaintiff has met his initial burden in making out a *prima facie* case of discrimination, the burden of production shifts to the defendant to provide a legitimate reason for the adverse action.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

Initially, Defendant's motion to dismiss Plaintiff's discrimination claim failed because this Court fairly interpreted a causal connection between Plaintiff's second EEOC filing alleging discrimination and his termination.  At the summary judgment stage though, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff.  Namely, Gates Hudson terminated Plaintiff's employment during his post-reassignment probationary period at Crystal Towers based on multiple factors, including but not limited to his repeated belligerence and insubordination in the workplace; Plaintiff's disrespectful response to his supervisors during a routine roll call; his failure to leave work at the requested time to avoid incurring overtime; his failure to remove his earbuds while speaking with a superior; his repeated complaints about his co-workers' conversations in their native language; and the concerns his Crystal Towers supervisors expressed about his continued employment with Gates Hudson.  *See* Dkt. 53 at 12. None of these factors are disputed in the summary judgment record, and the Court finds that Defendant has met its burden of production in stating a non-pretextual reason for terminating Plaintiff's employment during his probationary period at Crystal Towers.

13

Once a defendant meets this burden of production, the plaintiff must shoulder the burden of proving that the defendant's reasons for taking adverse action against him were pretextual. *See McDonnell Douglas*, 411 at 804. At this stage, Plaintiff's case fails. He has not offered any reliable or competent evidence that Defendant took his race, or religion, for that matter, into consideration when it terminated his employment. Although Plaintiff's filings contain a number of statements and *inferences* about Defendant's conduct, *see* Dkt. Nos. 59-61, as the non-moving party he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). But Plaintiff has failed to offer any evidence to support his allegation that Defendant's stated, legitimate business reasons were not its actual reasons for his termination. He has therefore failed to carry his burden at this stage of the *McDonnell Douglas* framework.

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

### C. Retaliation

Plaintiff's final Title VII claim is based on alleged retaliation for filing an EEOC complaint. Because Plaintiff seeks to establish proof through pretext rather than bringing direct or circumstantial evidence in support of his retaliation claim, the Court also analyzes Plaintiff's claim under *McDonnell Douglas*'s burden-shifting framework.

To establish a *prima facie* case of retaliation, Plaintiff must prove three elements: that (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) the adverse action was causally connected to his protected activity. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). Under this burden-shifting framework, if a plaintiff establishes a

*prima facie* case of retaliation, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory justification for taking the employment action at issue. *Navy Fed. Credit Union*, 424 F.3d at 405. If the defendant meets this burden, the burden then shifts back to the plaintiff, who must demonstrate that the defendant's stated reason is pretextual. *Id.*

There are two potential adverse actions—Plaintiff's transfer and his termination. The Court first addresses whether Plaintiff's transfer constituted an adverse action. The undisputed facts at summary judgment demonstrate that Defendant transferred Plaintiff at his request; furthermore, a transfer to another location is only actionable as an adverse employment action when it works a "significant detrimental effect" to the employee, such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." *James v. Booz Allen Hamilton*, 268 F.3d 371, 376 (4th Cir. 2004) (quoting *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999)). Plaintiff's transfer to Crystal Towers resulted in none of those things. Instead, the summary judgment record is clear that Plaintiff, who was not entitled to be transferred to a specific location of his choice, did not suffer any actionable diminution of his employment upon being transferred to Crystal Towers. *See* Dkt. 53-4, ¶¶ 10, 12. Therefore, Plaintiff's transfer cannot form the basis of his retaliation claim because it did not constitute an adverse action under Title VII.

Plaintiff's employment with Gates Hudson ended when he was terminated on September, 12, 2019.[5] *See* Dkt. 53-5. There is little doubt that termination almost always qualifies as an adverse employment action. *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)

---

[5] In his "Answer to Termination Notice," Plaintiff disputes that this was the actual date of his termination, arguing it was instead September 6, 2019. Dkt. 61 at 1. In another response to Defendant's Motion, however, Plaintiff recounts that he was terminated for unsatisfactory performance the morning of September 12, 2019. Dkt. 60-1 at 23. This is consistent with the allegation in the Amended Complaint, when Plaintiff also alleged he was terminated on September 12, 2019, in a letter dated September 6, 2019. Dkt. 14 at 5.

("A materially adverse change might be indicated by a termination of employment.") (citation omitted); *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) ("[I]t is patently obvious and undisputed that termination is a materially adverse action."). Therefore, the Court must determine whether Plaintiff engaged in a protected activity and whether that activity and his termination are causally connected.

The Court finds that Plaintiff engaged in a protected activity on September 5, 2019 when he filed a second EEOC charge of discrimination, and that his activity and his termination on September 12, 2019 are causally linked. Demonstrating a causal relationship between a protected activity and retaliation "is not an onerous burden" at the *prima facie* stage. *See Strothers*, 895 F.3d 317, 335 (4th Cir. 2018) (citing *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015)); *see also Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012). In Title VII retaliation cases, the Fourth Circuit has not read Supreme Court precedent to require evidence of but-for causation at the *prima facie* stage. *See Foster*, 787 F.3d at 251 (holding that *Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338 (2013), does not have "any bearing on the causation prong of the prima facie case"). This means that "[p]urported victims of retaliation do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action." *Strothers*, 895 F.3d at 335 (4th Cir. 2018).

The Court next turns to whether Defendant has met its burden of production under the *McDonnell Douglas* framework for retaliation claims. Defendant has come forward with legitimate, non-retaliatory justifications for terminating Plaintiff, including insubordination, his conduct toward co-workers, and concern by his supervisors about his suitability for continued employment with Gates Hudson. As the Court has explained, Defendant persuasively points to multiple legitimate reasons for terminating Plaintiff after his transfer to Crystal Towers.

16

Because Defendant has carried its burden of production, the presumption created by Plaintiff's *prima facie* case "'drops out of the picture,' and the burden shifts back to the employee to present evidence from which a reasonable juror could find that the proffered reason was a pretext for discrimination or retaliation." *Burgess v. Bowen*, 466 F. App'x 272, 277 (4th Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

Plaintiff has failed to rebut Defendant's non-retaliatory reason for his termination "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  Because no reasonable factfinder could conclude Defendant's reasons for terminating Plaintiff's employment were pretextual, summary judgment on Plaintiff's Title VII retaliation claim must be granted.

IV.   CONCLUSION

For these reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment

(Dkt. 52) is GRANTED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court

within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is

a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to

appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals.

Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to enter judgment for Defendant pursuant to Federal Rule of Civil

Procedure 58 and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
September 28, 2021


_____/s/_____
Rossie D. Alston, Jr.
United States District Judge